VOLKER-SCOWCROFT LUMBER CO v. VANCE et al.

No. 1791.   Decided February 6, 1907 (88 Pac. 896).

1. HOMESTEAD — EXEMPTIONS — PLEADING.—Under Revised Statutes 1898, sec. 1154, defining the phrase "head of a family," as used in the homestead statute, to include the husband or wife when the claimant is a married person, and prescribing the circumstances under which others are deemed heads of families, when considered in connection with section 1149, providing that a failure to make the declaration of a homestead shall not impair the homestead right, and other sections declaring that, if a homestead claimant is married, the homestead may be selected from the separate property of the husband, or with the consent of the wife, from her separate property, and that it shall be the privilege of either husband or wife to claim a homestead, the husband is no more designated the head of a family than is the wife, and an answer by a wife, in an action to enforce a mechanic's lien against her property, which alleges that she is the head of a family, consisting of herself and husband and children, that the property is her homestead for herself and family, sufficiently pleads her homestead right as against a demurrer not challenging the answer for want of facts, but which proceeds on the assumption that no exemption of a homestead can be asserted against a mechanic's lien.[1]

2. SAME — EXEMPTIONS — SALE ON EXECUTION.—The Legislature, in complying with the provisions of the Constitution requiring it to provide for the selection and exemption of a homestead from sale on execution, may regulate the claim of the right so that its exact limits may be known, but it cannot narrow, defeat, or limit the homestead right as secured by the Constitution by subjecting the homestead to any kind of sale on execution.

---

[1] Kimball v. Lewis, 17 Utah 381, 53 Pac. 1037; Kimball v. Salisbury, 19 Utah 161, 56 Pac. 973.

3. MECHANICS' LIENS — PROPERTY SUBJECT TO LIEN — CONTRACT WITH OWNER. — Where the owner of a homestead voluntarily incumbers it, in the manner prescribed by Revised Statutes 1898, section 1155, by giving a materialman furnishing materials for an improvement thereon a lien therefor, the materialman acquires a lien not by virtue of the statute creating a lien, but by virtue of the contract.

4. SAME — CREATION OF LIEN — STATUTES.—In the absence of an express contract creating a lien, the lien which a materialman becomes entitled to depends solely on the statute for its existence, for his lien is a preference which he may secure by proceeding in a particular way and complying with the statutory requirements on the subject, and not otherwise.

5. HOMESTEAD — PROTECTION — DECREE ORDERING SALE.—A decree ordering the sale of a homestead to satisfy a judgment enforcing a statutory lien for materials furnished for an improvement thereon rests alone for its authority on the statute, and is an execution within Constitution, article 22, section 1, providing that the Legislature shall provide for the selection of a homestead to be exempt from execution sale.

6. MECHANICS' LIEN — PROPERTY SUBJECT TO — HOMESTEAD.—Revised Statutes 1899, section 1156, providing that a homestead shall be subject to execution to satisfy judgments on debts secured by mechanics' liens for labor done for the improvement of the same, is in conflict with Constitution, article 22, section 1, requiring the Legislature to provide for the selection and exemption of a homestead; the Constitution exempting a homestead from execution sale without exception.

APPEAL from District Court, Weber County; J. A. Howell, Judge.

Action by the Volker-Scowcroft Lumber Company against Mary Flinders Vance and another. From a judgment for plaintiff, defendant Mary Flinders Vance appeals.

REVERSED.

*J. D. Skeen* and *Geo. Halverson* for appellant.

*C. C. Richards* and *A. E. Prath* for respondent.

It is true in a marital sense that the husband is the head of the family, but if the family domicile is owned by the wife she is the head of the family for the purpose of protecting the exemption. (Thompson on Homesteads, secs. 40, 41, 220, 225 and cases cited in notes; *McPhee v. O'Roucke*, 10 Col. 331, 15 Pac. 420, 3 Am. St. 579; *Stout v. Rapp*, 17 Neb. 467; *Partee v. Stewart*, 50 Miss. 717; *McHugh v. Smalley*, 17 Neb. 620; *Orr v. Shroft*, 22 Mich. 260.)

Article 22, section 1, can be construed in no other way than as the mandate of the people acting in their sovereign capacity. The people were not satisfied with using, in the article in question, the strongest language known, but in section 26, article 1, they say, "The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." (*State v. Holden*, 14 Utah 85; *Eastman v. Gurrey*, 14 Utah 171; *Judge v. Spencer*, 15 Utah 242; *Boyd v. United States*, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. 524.)

"It must be obvious, however, that where the constitution of a State provides for a homestead exemption and defines such exemption in any distinct particular the Legislature cannot diminish the exemption in that particular without an express grant of power in the Constitution so to do." (Thompson on Homesteads and Exemptions, sec. 16; *State v. Armstrong*, 17 Utah 176; *Judge v. Spencer*, 15 Utah 242; *Matthews v. Jensen*, 21 Utah 223; *Bank v. Chambers*, 21 Utah 334; *Parker v. Quinn*, 23 Utah 332.)

The homestead was intended to protect the home for the family as against acts of the head of the family; and yet to subject it to a mechanic's lien would enable the husband to make improvements and the mechanic deprive the family of the exemption without any element of consent on the part of the family. It would be a forced sale on execution, the very thing the people in their sovereign capacity sought to avoid. (*McPhee v. O'Rourke*, 10 Colo. 301, 15 Pac. 420, 3 Am. St. 581; *Tuttle v. Strout*, 7 Minn. 465, 82 Am. Dec.

108; *Cogel v. Mickow,* 11 Minn. 354; *Meyer v. Berlandi,* 30 Minn. 438, 12 Am. St. 633; *Keller v. Struck,* 61 Minn. 446; Boisot on Mechanics' Liens, sec. 30; Thompson on Homesteads and Exemptions, sec. 16; *Coleman v. Ballandi,* 22 Minn. 144; *Mortin v Hughs,* 67 N. C. 293; *Cumming v. Bloodworth,* 87 N. C. 83; *Lee v. Murphy,* [Cal.], 51 Pac. 549; *Walsh v. McManomy,* 74 Cal. 356, 16 Pac. 17; *Pichards v. Shea,* 70 Cal. 187, 11 Pac. 607.) The notice must be in substantial compliance with the statute. (Boisot on Mechanics' Liens, sec. 418; *Morrison v. Willard,* 17 Utah 306, 70 Am. St. 784, 53 Pac. 832; *Campbell v. Jackson,* [Ill.], 34 N. E. 39; *In re Emslie,* 98 Fed. 716; *Buckley v. Commercial National Bank,* 171 Ill. 284, 49 N. E. 617; *Clark v. Boarman* [Md.], 43 Atl. 926.)

### RESPONDENT'S POINTS.

Lord Coke says "That 'steth' or 'stead' betokeneth a place." According to that definition homestead would mean home-place, the place where the home is. It is the home—the house and the adjoining land—where the head of the family dwells. This term as been substantially so defined by many courts. (21 Cyc. 458; Thompson on Homestead Exemptions, sec. 100, p. 85; Waples on Homestead and Exemption, pp. 1, 275; *Gammett v. Storrs,* 15 Utah 336.)

In 21 Cyc. 472, it is said, "A mere intention to occupy at some future time is never sufficient. Such intent should be evidenced by unmistakable acts showing an intention to carry out such design, and must usually be followed by actual occupancy within a reasonable time. (*Hair v. Davenport* [Neb.], 103 N. W. 1042; *White v. Danforth* [Iowa], 98 N. W. 136; *McCrie v. Hixon Lumber Co.* [Kan.], 51 Pac. 966; *Evans v. Calman* [Mich.], 52 N. W. 787; *Power v. Burd* [Mont.] 43 Pac. 1094; *Sharp v. Johnson,* [Tex]., 19 S. W. 259.) The purpose of the law being to require such open evidence of this intention as will prevent the use of this right as a shield for fraud. (*Foley v. Hollkamp* [Tex.], 66 S. W. 891.) If therefore a lien has attached or credit has been extended on the faith of such property,

before such a selection has been made, the subsequent selection would not divest the liability. (*Stevens v. Stevens*, 10 Allen 146; *Gunn v. Barry*, 15 Wall. 610; Thompson on Homesteads and Exemptions, 291, secs. 317, 318; *Edwards v. Kearzy*, 94 U. S. 595; *Tuttle v. Howe*, 14 Minn. 145; *Bowles v. Hoard*, 71 Mich. 150; *Bunn v. Lindsay*, 95 Mo. 250; *Homestead Cases*, 22 Gratt. [Va.], 266, 12 Am. Rep. 507; *Willard v. Masterson* [Ill.], 43 N. E. 771; *Robinson v. Wilson*, 15 Kan. 595; *Payne v. Fraley* [Mo.], 65 S. W. 292, 21 Cyc. 512; *Smith v. Richards* [Idaho], 21 Pac. 419; *Garland v. B. R. Irr. Co.*, 9 Utah 350, 164 U. S. —; *Sanford v. Kunkel* [Utah], 85 Pac. 364.) There is another class of debts for which the homestead may be liable notwith-standing the exemption, namely, purchase price debts. (*McHendry v. Reilly*, 13 Cal. 76; *Skinner v. Beatty*, 16 Cal. 157; *Phelps v. Porter*, 40 Ga. 485. Waples on Homesteads and Exemptions, 331, 499.) To this class are likened the debts due materialmen and mechanics, even in the absence of an exception from the exemption in their favor. (Thompson on Homesteads and Exemptions, secs. 372, 373; Waples on Homesteads and Exemptions, p. 361; 15 Am. & Eng. Enc. of Law [2 Ed.], 617, 620, note 2.)

STRAUP, J.

1. This action is brought to foreclose a materialman's lien. It is alleged in the complaint that the defendant Mary Flinders Vance was the owner of certain lots in Ogden City, Utah; that she let a contract to defendant Peterson to construct a dwelling on the premises; that the plaintiff, at the request of both defendants, furnished building material which was used in the construction of the house, and which remained unpaid; and that a notice of intention to claim a lien was filed for record. The defendant Vance answered, admitting her ownership of the lots, the letting of the contract to Peterson for the construction of the house, but denied that the material furnished by plaintiff was furnished at her request. It was further alleged by her that at the time of the filing of her answer, and at all times mentioned in

the complaint, she was the head of a family, consisting of herself, two children, and her husband; that prior to and at the time of the letting of the contract the lots were and still are her homestead; that she let a contract to Peterson to erect a dwelling on the lots for the use of herself and family, and to hold them as a permanent homestead; that she paid the contractor the full contract price; that the value of the lots, with the improvements, does not exceed the homestead exemption, and thereupon she prayed that the real estate with the improvements be declared her homestead and exempt from plaintiff's lien and from sale on execution. The court sustained plaintiff's general demurrer interposed to that portion of defendant's answer which alleged that the homestead was exempt, "upon the ground that the allegations of said answer respecting such claim of exemption do not constitute a defense to plaintiff's action." The defendant refused to further plead. A judgment was rendered in favor of plaintiff, awarding it a lien on the real estate and ordering a sale of the premises in satisfaction of plaintiff's claim, from which judgment the defendant Vance has prosecuted this appeal.

2. The homestead statute (section 1156, Rev. St. 1898) provides:

"A homestead is subject to execution in satisfaction of judgments obtained (1) on debts secured by mechanics' or laborers' liens for work or labor done or material furnished exclusively for the improvement of the same." The apellant contends that this statute is in violation of section 1, article 22, of the Constitution, which provides that "the Legislature shall provide by law, for the selection by each head of a family, and exemption of a homestead, which may consist of one or more parcels of lands together with the appurtenances and improvements thereon of the value of at least fifteen hundred dollars from sale on execution."

Nearly all of appellant's brief is addressed to this question. While the respondent does not concede appellant's proposition, nevertheless it has not offered anything in support of the validity of the statute. It seeks to uphold the ruling of the court upon the ground that the answer does not contain sufficient allegations that the defendant was the

head of a family, that the lots were her homestead at the time the contract was let to Peterson, and that a selection of a homestead had been made by her before plaintiff's lien attached.    It is argued that, if the wife be the head of a family consisting of children and her husband, the facts and circumstances which make her such must be alleged; otherwise it will be presumed that the husband is the head.  This may be true under a statute designating the husband the head, or in the absence of a statute defining who is the head of a family.    Subdivision 1, sec. 1154, Revised Statutes 1898, provides that the phrase "head of a family," as used in the homestead statute, includes within its meaning "the husband or wife, when the claimant is a married person; but in no case are both husband and wife entitled each to a homestead under the provisions of this title, except to the extent hereinbefore provided."    Subdivision 2 prescribes the conditions and circumstances under which other persons are deemed heads of families.    In subdivision 1 the wife, equally with the husband, without conditions or circumstances, is included within the phrase "head of a family." If the statute had intended to make her the head so as to entitle her to lay claim to the homestead only in the event of the desertion, or absence of the husband, or upon his infirmity or inability to render support, or upon other conditions, or under other circumstances, it seems to us the Legislature would have said so.    So far as the homestead statute is concerned, and so far as giving the one or the other a right to lay claim to a homestead, the husband is no more designated the head of a family than is the wife.    This also is manifest from other sections of the same statute, which expressly provide that, "if the homestead claimant is married, the homestead may be selected from the separate property of the husband, or, with the consent of the wife, from her separate property," and "it shall be the privilege of either the husband or the wife to claim and select a homestead to the full extent prescribed in this title, on the failure of the other, being the judgment debtor, to make such claim and selection."    Nor do we think, in view of what has been

said by this court in prior decisions (*Kimball v. Lewis*, 17 Utah 381, 53 Pac. 1037; *Kimball v. Salisbury*, 19 Utah 161, 56 Pac. 973) that the answer is wanting in facts because not containing specific averments of a declaration and selection of the real estate as a homestead. This view, too, finds support from the homestead statute itself (section 1149), where it is provided that a failure to make the declaration shall not impair the homestead right. We are of the opinion that the facts alleged, showing the defendant to be the head of the family and that the real estate is and was her homestead, are sufficient to withstand a general demurrer, especially since the demurrer does not challenge the answer for want of facts upon which the claim of exemption is made, but proceeds specifically upon the assumption that no exemption of a homestead can be asserted against plaintiff's demand.

3. This, then, brings us to the question as to whether the homestead was subject to plaintiff's lien. This depends upon the validity of the statute, which, in terms, makes the homestead subject to execution in satisfaction of judgments obtained on debts secured by mechanics' and materialmen's liens. Mr. Boisot, in his work on Mechanics' Liens (section 30) says:

"Under a constitutional direction to exempt from seizure for debt a reasonable amount of property, the Legislature, after exempting homesteads from execution and sale, cannot make them subject to mechanics' liens; and where the Constitution creates a homestead right, exempt from execution for debt except for payment of obligations contracted for its purchase, for taxes, for agricultural laborers' liens, and for mechanics' liens for work done on the premises, an act attempting to give materialmen a lien on homesteads is unconstitutional."

To the same effect is Thompson on Homesteads and Exemptions, where, at section 16, the author, in substance, says that a constitutional provision which provides that the homesteal shall be exempt from forced sale prohibits the Legislature from subjecting it to sales for labor done or material furnished for its improvement. Where the Constitution of a state provided that a reasonable amount of property shall

be exempt from seizure and sale for the payment of any debt or liability, it was held that an exemption law excepting from its operation debts or liabilities for laborers or mechanics was void. (*Tuttle v. Strout,* 7 Minn. 465 [Gil. 374], 82 Am. Dec. 108; *Cogel v. Mickow,* 11 Minn. 475 [Gil. 354]; *Coleman v. Ballandi,* 22 Minn. 147; *Cumming v. Bloodworth,* 87 N. C. 83.) Involving the same principles of law, and to the same effect, are the following cases: *Jossman v. Rice,* 121 Mich. 270, 80 N. W. 25, 80 Am. St. Rep. 493; *Donaldson v. Voltz,* 19 W. Va. 156; *Fallihee v. Wittmayer* [S. D.], 70 N. W. 646; *Sampson v. Williamson,* 6 Tex. 102, 55 Am. Dec. 762. The mandatory provisions of the Constitution are that the Legislature shall provide by law for the selection and exemption of a homestead from sale on execution. In the discharge of the duty imposed, the Legislature may provide remedies for the protection of the homestead rights created and secured by the Constitution, and may regulate the claim of the right so that its exact limits may be known and understood, and may make supplemental legislation in particulars wherein they are not as complete as may be desirable, but all such legislation must be subordinate to the constitutional provision and in furtherance of its purpose, and must not in any particular attempt to narrow, defeat, or limit the homestead right as defined and secured by the Constitution. (Cooley's Const. Lim., p. 122.) The following things may be said to have been defined and secured by our Constitution; (1) The right to select by each head of a family (2) a homestead of one or more parcels of land (3) of the value of at least $1,500 (4) exempt from sale on execution. In the exercise of the power conferred upon it, the Legislature may, by supplemental legislation, prescribe convenient remedies for the protection of these rights, and to adopt the necessary regulations in regard to time and mode of exercising them, which are reasonable and uniform and designed to secure and facilitate the exercise of such rights, but the Legislature, among other things, may not confine the homestead to one parcel of land, nor fix the value of the homestead at less than $1,500, nor

subject the homestead to any kind of sale on execution. While the Constitution has placed no inhibition to a voluntary alienation of a homestead, it has specifically exempted it, without exception, from all involuntary or execution sales. The statute providing that the homestead is subject to execution in satisfaction of judgments obtained on debts secured by mechanics' or laborers' liens for work and labor done or materials furnished for its improvement seeks to make the homestead subject to a particular kind of sale on execution, and this the Legislature may not do. As before observed, the Constitution has not prohibited a homestead claimant from selling or voluntarily incumbering the homestead, and he may make any kind of voluntary alienation of it, or incumber it, except as restricted by section 1155 of the homestead statute, which we need not here consider. Now, it may be said that the defendant, the homestead claimant, having herself voluntarily made and entered into the contract for the construction of the building on the homestead, and the material having been furnished by plaintiff in pursuance of it, therefore she voluntarily incumbered the homestead the same as though she had given a mortgage upon it. That would be true if by the terms of her contract she had pledged the homestead, or had given a lien on it as by law provided. But it is not made to appear that the contract contains any stipulation giving contractors, materialmen, laborers, mechanics, or any one a lien upon the homestead, and nothing appears from which the contract can be construed into a contract for a lien. In the absence of an express contract creating it, the lien which a materialman or mechanic may become entitled to depends solely upon the statute for its existence. It is a preference which he may secure if he proceeds in a particular way and fully complies with the statutory requirements upon the subject, and not otherwise. Plaintiff's lien, so far as made to appear, has its origin alone in the statute and proceedings taken under it, and does not arise out of or upon any contract. The decree ordering the property sold in satisfaction of the judgment obtained rests alone for its authority upon the statute, and not upon any contract

made by the defendant, and hence the order of sale is clearly an execution sale within the meaning of the Constitution. This principle of law is well illustrated in, and our views fully sustained by, the following authorities: *Coleman v. Ballandi,* supra; *Moran v. Clark,* 30 W. Va. 358, 4 S. E. 303, 8 Am. St. Rep. 66; *Lanahan v. Sears,* 102 U. S. 318, 26 L. Ed. 180; *Sampson v. Williamson,* supra. If it is within the power of the Legislature to subject the homestead to execution in satisfaction of judgments obtained on debts for work and labor done or materials furnished for improvements of the same when the Constitution has not made any such exception, then, why cannot the Legislature subject it to execution in satisfaction of judgments obtained on other debts? To say that the Legislature may do so when the debt grows out of something done or furnished for the improvement of the homestead, but may not do so if the debt arose in some other way, is making a distinction not made by the Constitution itself. It may be, upon equitable principles, that the homestead ought to be made subject to such improvements. On an examination of Constitutions of different states where homestead exemptions are provided for, we find in nearly all of them that the homestead, by the terms of the Constitution, is made subject to improvements. In looking at the proceedings of our constitutional convention, we find the provisions of such Constitutions referred to and discussed, and several amendments and substitutes proposed, subjecting the homestead to improvements made thereon, but all of them were voted down and rejected. (Pro. Const. Conv., pp. 1772, 1774, 1768, 1771.) Other exceptions were also proposed, but they also were rejected.

Without resorting to these proceedings, it is obvious that the constitutional provision exempts a homestead from execution sale without restriction, limitation, or exception of any kind. The people in their Constitution had the right to provide for any sort of a homestead and to guard it as they pleased, to subject it to restrictions or without restrictions, as in their wisdom they saw fit. When the people, through their

Constitution, have spoken and have thus exempted the homestead from execution sales without exceptions of any kind, neither the Legislature nor the courts have power to subject it to any such sale. With the wisdom or equity of such a provision neither we nor the Legislature have anything to do. Homestead rights are not founded upon equity. They are founded upon public policy for the protection of the home and the prosperity of the State, carrying out the policy of republics to encourage and multiply freeholders, the natural supporters and defenders of a free government.

We are of the opinion that the statute in question is in conflict with the Constitution, and is void. It therefore follows that the court erred in sustaining the demurrer. The judgment of the court below is reversed, and the court directed to overrule the demurrer and to proceed with the case in accordance with the views herein expressed, costs to appellant.

McCARTY, C. J., and FRICK, J., concur.