DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH

(*Continued from Volume 50*)

## EVANS v. JENSEN et al.

No. 3074. Decided November 5, 1917. (168 Pac. 762.)

HOMESTEAD—EXCEPTION OF PRE-EXISTING LIEN. Under Const. art. 22, section 1, requiring the Legislature to provide by law for selection by each head of a family, and exemption from sale on execution, of a homestead of a certain value, a single man, having contracted for erection of a house on his lot, cannot, because of marrying after the work has been done, entitling the contractor to a mechanic's lien, claim it as exempt from such lien.[1]

GIDEON, J., dissenting.

Appeal from District Court, First District; *Hon. J. D. Call*, Judge.

Action by W. H. Evans against Jesse N. Jensen and others.

Judgment for plaintiff. Defendants Jensen appeal.

AFFIRMED.

*Walters & Harris* for appellant.

*A. A. Law* for respondent.

---

[1] *Lumber Co.* v. *Vance*, 32 Utah 74, 88 Pac. 896; *Crosby* v. *Anderson*, 49 Utah 167, 162 Pac. 75.

## APPELLANTS' POINTS

The right of a homestead is superior to the right of a mechanic's lien upon a forced sale of the premises. *Volker v. Vance,* 32 Utah, page 74. The facts in that case are identical with the facts in the case at bar, with the exception that in the case at bar the homestead right did not exist at the time of doing the work and furnishing the materials upon which the mechanic's lien is founded, but did exist at the time of the filing of the action to foreclose the lien.

Does the marital status of the debtor at the time of contracting the debt determine the validity of homestead claim, or is it determined by the marital status of the debtor at the time of the selection of the homestead?

Our supreme court has repeatedly held that the head of a family may select a homestead at any time before sale, and the homestead thus selected will not be subject to any lien involuntarily created prior to the date of selection. *(Kimball v. Salisbury,* 17 Utah 381; *Kimball v. Salisbury,* 19 Utah 161; *Folsom v. Asper,* 25 Utah 299; *Volker v. Vance,* 32 Utah 74; *Bunker v. Coons,* 21 Utah 164; *Hansen v. Mauss,* 40 Utah 361; *Crosby v. Anderson,* 49 Utah 167, 162 Pac. 75; *Giesy-Walker Co. v. Briggs,* 49 Utah 205, 162 Pac. 876.)

From the position taken by our supreme court we feel that the law in this state is that even were the defendant's property impressed with a judgment prior to the selection of his homestead, the subsequent selection of the homestead would have the effect of cutting off such lien.

In the following cases the courts have held that the selection of the homestead would have the effect of divesting a judgment lien which was valid. *(McMillan v. Mau,* [Wash.] 25 Pac. 441; *Association v. Watson,* [Kan.] 25 Pac. 586; *Weare v. Johnson,* [Col.] 38 Pac. 374; *Woodward v. Peoples Bank,* [Col.] 31 Pac. 184; *Deville v. Widoe,* 8 Am. St. Rep. 852; *Wiss v. Stewart,* [Wash.] 47 Pac. 736; *Maples v. Rawlins,* [Tenn.] 80 Am. St. Rep. 903.)

In the following cases the courts have held that the subsequent marriage of the defendant, entitled him to claim a homestead in lands, not exempt at the date of the judgment.

(*Irwin* v. *Lewis*, 62 Miss. 13; *In re Welley*, 11 Nevada, 260; *Rollings* v. *Evans*, 23 S. C. 316; *Dye* v. *Cooke*, 88 Tenn. 275.)

## RESPONDENT'S POINTS

In this State, the Statute and the Constitution limits the homestead right to the head of families, so that at the time plaintiff entered into the contract with Jensen, Jensen not being the head of a family, and being the owner of the property, there can be no doubt but what a lien was created upon the performance of the contract by plaintiff, before the homestead right came into existence. Under such circumstances plaintiff contends that the defendant Lola Jensen's right in that property coming to her as it did through her hubsand, that she came into it as he possessed it subject to the lien of the plaintiff.

"Thus the right of a widow and orphan children in a homestead is a derivative one coming from the husband and father. They succeed to it as he possessed it, it is not enlarged by his death, except as concerns the condition of subsequent occupancy, and they can not assert the right as against debts and liens which were superior to that right during his life time." (*Evans* v. *Evans*, 13 Bush, 587.)

The case of *Folson* v. *Aspen*, 25 Utah 299, does not apply to the case at bar—this is not a case where we are claiming a lien because the property had not been selected as a homestead at the time the contract was entered into, as in that case.

FRICK, C. J.

The plaintiff commenced this action to foreclose a mechanic's lien, which he had obtained in his own right, and also to foreclose two assigned liens; but, since the assigned liens are of the same class as plaintiff's lien, no reference will hereafter be made to them. The liens were sought to be foreclosed against premises owned by the defendant Jesse N. Jensen, which, at the time the action was commenced, were occupied by him and Lola Jensen as husband and wife. The complaint is in the usual form in such actions. The claims of the other

defendant are not material to this controversy, and will not be further mentioned.

Jesse N. and Lola Jensen filed an answer to the complaint, in which they admitted the allegations therein contained, but set up an affirmative defense, in which they claimed the premises described in the complaint as a homestead, and, for that reason, exempt.

The court found the facts, which findings are not assailed, substantially as follows:

That the defendant Jesse N. Jensen is the owner of a certain parcel of ground, 12x18 rods; that on the 28th day of June, 1915, the plaintiff and said Jesse N. Jensen entered into a contract whereby the plaintiff agreed to perform all the labor and to furnish all the materials to complete the brick work on a dwelling erected on the premises aforesaid for said Jensen, and for which labor and materials he agreed to pay the sum of $513.10; that the plaintiff complied with the terms of said contract, and completed the said work on the 27th day of July, 1915; that within the time required by our statute the plaintiff filed his notice of claim for a mechanic's lien against said premises as provided by law; that at the time the contract was entered into and when the labor was performed and the materials furnished as aforesaid, the defendent Jesse N. Jensen was a single man and not the head of a family; that thereafter, on the 29th day of August, 1915, said Jesse N. Jensen married the defendant Lola Jensen and by reason thereof became the head of the family, and that said defendants, as husband and wife, "since the completion of the said building and at the time of the beginning of this action, had taken up their abode in the dwelling house hereinbefore mentioned, and selected the same as their homestead, and they still reside upon the said premises and claim them as their homestead"; and that the value of said premises, including said dwelling, does not exceed the sum of $2,000, which is the amount defendants are entitled to as a homestead exemption under our law. The court also found that the defendants have not paid the plaintiff the amount due on said contract or any part thereof.

The court made conclusions of law that plaintiff was

entitled to a personal judgment against Jesse N. Jensen for the amount due upon said contract, that the mechanics' liens were valid and enforceable against the premises in question, and ordered that the same be foreclosed and the premises sold to satisfy the same. Judgment was entered accordingly, from which the defendant Jesse N. Jensen and Lola Jensen appeal. They insist that the court erred in holding that the premises in question were not exempt as against the mechanics' liens in question here. The mechanics' liens will hereafter be referred to in the singular number.

The precise question here presented has never been determined by this court. The question for decision is whether a single man, who is not the head of a family, and who is not entitled to a homestead exemption, and who enters into a contract for the purpose of improving and enhancing the value of his property by erecting a dwelling house thereon, and after the labor and materials necessary to complete said dwelling have been performed and furnished, and the contract has been fully performed, and the right to claim a mechanic's lien under our statute is complete, may, by entering into the marriage relation and thereby becoming the head of a family, claim the premises as exempt and immune from a mechanic's lien, and thus defeat the enforcement of such lien. In other words, may a single man, after entering into a contract to improve and enhance the value of his property, and after receiving the full benefits of such contract, the performance of which, under our statute, entitles the person who performs the same to a mechanic's lien on such property, change his status, by entering the marriage relation and thus becoming the head of a family, and claim such property as a homestead, and, as such, exempt and immune against a mechanic's lien?

It is not disputed—indeed, it is conceded—that at the time the contract was entered into, as well as at the time when it had been fully performed, the premises in question, by reason of the status of the defendants, were subject to our mechanic's lien law, and that the defendants, or either of them, could not then have claimed the property as a homestead, or as being immune against the mechanic's lien of the plaintiff. This

case, therefore, presents the propositions just stated, free from all complications. Our Constitution (article 22, section 1) provides:

"The legislature shall provide by law for the selection by each head of a family an exemption of a homestead, which may consist of one or more parcels of lands, together with the appurtenances and improvements thereon, of the value of at least fifteen hundred dollars, from sale on execution."

That provision, it is held in *Lumber Co.* v. *Vance,* 32 Utah 74, 88 Pac. 896, 125 Am. St. Rep. 828, constitutes both a mandate to and a limitation upon the Legislature; a mandate requiring that body to pass a proper law to the effect that each head of a family in this state may select and claim a homestead of a certain value, and a limitation that such homestead shall be exempt "from sale on execution." What the Constitution thus enjoins is that a certain homestead exemption shall be provided for each "head of a family." Persons who do not possess that status are necessarily excluded from the foregoing constitutional provision, and they are likewise excluded from the statute which was passed by the legislature of Utah in obedience to the foregoing mandate. At the time when the contract to improve the premises in question was entered into, and at the time it had become fully performed, neither of the defendants was married, and neither of them had acquired the status which entitled them to claim a homestead exemption under our law. Upon the other hand, at the time when the contract was entered into, and at the time it had been fully performed, the property was subject to a mechanic's lien. May the owner of property, after entering into a contract for labor and materials to improve the same, and after obtaining the full benefits of the contract, change his status, so as to defeat the right to a mechanic's lien on the improved property, the right to which lien was complete when the changed status was effected? We think not. If a single man may change his status by marriage, he may also do so in any other manner, if such a change results in constituting him the head of a family. He may thus adopt an infant child, who is dependent on him for support, or he may assume the care of

his widowed sister's infant child or children, who are dependent, or he may assume the care and custody of an infant brother or sister, who is dependent, and, under the homestead law, may thus become the head of a family, which will enable him to claim a homestead exemption. And he may do all this for the sole purpose of preventing a party who improved his property from collecting the contract price for making such improvement.

From all that has been said it is clear that the defendant Jesse N. Jensen possessed no right to claim a homestead exemption when he entered into the contract for the labor and materials with which his property was improved and enhanced in value. Neither the Constitution nor any statute of this state then made his property immune against any debt he might incur. He could have incumbered his property in any way he saw fit, and his status afforded him no protection. All that is held in the Vance Case is that the head of a family, who enters into a contract when the status defined by the Consituation exists, is not prevented from claiming his homestead exemption against one who claims a mechanic's lien thereon. That decision is based on the constitutional provision that the homestead of the head of a family shall be immune from "sale on execution." This is logical, because in that case both the status of the owner and the character of the property, both of which are necessary to the right of exemption, existed at the time the contract for labor and materials was entered into, and the labor was performed and the materials furnished, and, that being so, under our statute (Comp. Laws 1907, section 1155), the owner, being married, in no event could incumber the homestead without the consent of his spouse. If a married owner were permitted to enter into a contract by which a mechanic's lien could be successfully enforced against the homestead, he would be permitted to do indirectly what the statute says he may not do directly. If, in the case at bar, Jesse N. Jensen had executed a mortgage on the property in question at the time he entered into the contract for the labor and materials, or at any time while he was single, and had squandered every dollar of the consideration, the mortgage

would, nevertheless, be binding on both him and the one whom he subsequently married. Why? Because he was not the head of a family when the mortgage was executed, and had no homestead right at that time. Why is it that, as a single man, he may bind his property by one form of contract, but may not do so by another?

It is said, however, that a mechanic's lien is purely a creature of statute; that it is a lien created by law. That is true. But that is also true of homestead exemptions. That right, too, is created by law, and, in our judgment, it is the duty of the courts to protect both rights. The right to the exemption is one of public policy, based upon the status of the claimant, while the right to a mechanic's lien is based upon the highest principles of equity. If the owner of the property is married, or if he is the head of a family, then he who furnishes labor and materials to him to improve his homestead must take notice of the law that his right to claim the exemption is superior to the laborer's or materialman's right to claim a lien against the homestead. The laborer or materialman may thus protect himself by entering into a contract with both the husband and wife, and by that means may subject the homestead to his claim. If the owner is permitted to change his status, however, after he has obtained the labor or materials, and may then successfully claim the property as immune, he is permitted to perpetrate a fraud upon the laborer and materialman, and may thus obtain something for nothing. All this is not answered by the statement that under certain circumstances property may be claimed as exempt, even after execution has been levied and it has been noticed for sale. It is quite true that, where there is no lien on specific property, a person entitled to certain special exemptions may claim the exemptions at any time before sale. A mere cursory examination of our exemption statute, however, shows that all of those exemptions are specific, and relate to the character of the property and the occupation of the owner. Those exemptions, unlike the homestead exemption, do not, except in a limited sense, depend on the status of the claimant. In those exemptions there is no specific lien, as in case of a mortgage or

mechanic's lien.  In a case like the one at bar, the owner of
the property, in view of his status, had a perfect right to sub-
ject his property to any special claim he saw fit, and whether
his contract, which at all events indirectly pledged his prop-
erty as security for a particular debt, may be enforced or not,
in our judgment, depends entirely upon the status of the
exemption claimant at the time the contract was entered into.
As pointed out before, both under the Constitution and the
statutes, Jesse N. Jensen could have entered into a contract by
which he had directly pledged the property in question as
security for the claim preferred against it, and such contract
would be enforceable against the property, notwithstanding he
subsequently changed his status from a single to a married
man.

It is insisted, however, that under our Constitution and
statutes a contract by which the property was indirectly
pledged is unenforceable against the owner's consent.  We
have spoken of a contract by which the owner indirectly
pledges his property, because, under our statute, no mechan-
ic's lien can be claimed, except by virtue of a contract with
the owner of the property or his agent, either express or
implied.  Comp. Laws 1907, section 1372.  A contractor may
bind the owner's property in purchasing materials and in
employing labor, upon the theory that he is the agent of the
owner.  If, therefore, a single man enters into a contract for
labor or materials, or both, to improve his real property, and
the labor is performed and the materials are furnished pursu-
ant to the contract, the person who performs the labor or
furnishes the materials, upon compliance with the statute, is
just as much entitled to a specific lien against the property as
though he had obtained a mortgage.  The reason that such
may not be done against a married person, who was such when
the contract for the improvement was entered into, is clearly
stated in *Lumber Co.* v. *Vance,* supra.  True, no claimant
may enforce the lien unless he complies with the statutory
provisions by which the lien is created.  If, however, he does
comply with those provisions, the lien is based upon the con-
tract with the owner, and relates back to the performing of

the labor and the furnishing of the materials, and to the time when the owner did not possess the right of exemption, and hence such lien should be held enforceable.

The principle involved here is quite different from that which controls in cases where execution is levied on property generally. In such cases courts have frequently held that the exemption may be claimed at any time before the property is sold, and that the right to claim the exemption is determined as of the time when the sale is about to take place. In those cases, however, no question of special lien is involved, as here. In the case at bar the mechanics' liens attached while the property was subject to such a lien and before Jensen had the right to claim the exemption. Here, as we have shown, the lien is based on Jensen's contract and upon the statute. The statute entered into the contract, and was just as much a part of it as though it had been expressly set forth. In order, therefore, to permit Jensen's claim to prevail in this case, we must set aside a lien which attached before Jensen had the right to claim the exemption and while the property was subject to the lien. In levying an execution on the debtor's property generally no lien exists until a levy is made, and in those cases no exemption rights which affect any particular property are involved as in the case here. The decisions, therefore, in which it is held that the exemption may be claimed at any time before sale, have no application here.

While it is true that, ordinarily, the courts are not concerned with the policy of the law, yet it is not their duty to place a construction on any law ''when another reasonable construction is permissible,'' which will permit the owner of property to improve it and to enhance its value at the expense of others. In our judgment, such a construction is not required by anything that is contained in the Constitution or in any statute of this state, nor by anything said in any decision of this court. We can find nothing in the Constitution, nor in the statute, which requires this court to so construe the law relating to homestead exemptions as to take the labor and materials belonging to one head of a family and give it to another, who was not entitled to the exemption when the work

was done, and who has changed his status at the last moment to avoid the enforcement of the right of the head of a family furnishing the labor and materials. Why should it be held that those heads of families who own homesteads are favored by law as against those heads of families who may have none, and who have performed labor and furnished materials to those who have homesteads, but who, at the time the labor was performed and materials furnished, were not the heads of families and did not have the right to claim the exemption? This court, so far as we are aware, has never authorized the character of property to be changed after a lien has once attached. Indeed, this court is committed to the contrary doctrine. In *Crosby* v. *Anderson,* 49 Utah 167, 162 Pac. 75, it is expressly held that non-exempt property may be converted into property which will be exempt; but the conversion must be made at some time before and not after a lien has attached. That principle is especially applicable to homestead exemptions by the great weight of authority. Nor, in our judgment, is there anything to the contrary in any of the cases decided by this court.

As we view it, there is a great difference in principle between the claim of an owner of property who is the head of a family and entitled to a homestead exemption at the time he enters into a contract to improve his property, and who, at said time, may do nothing to bind or incumber his homestead as against his spouse, and an owner who, when he enters into such a contract, has no right of exemption and may legally bind or incumber his property, either directly or indirectly. In the first case, as held in *Lumber Co.* v. *Vance,* the owner may avoid a mechanic's lien because of his status at the time of making the contract; but in the second case we can see nothing in the law why he, too, shall be permitted to claim a homestead exemption as against a contract which culminated into a valid lien at a time when the owner of the property had no right of exemption whatever. The injustice of such a holding is illustrated by the record in this case. Here Jesse N. Jensen, the owner, singles out one lien claimant and secures his claim by mortgage, while he refuses security to all other

claims equally meritorious. He thus accomplishes what our lien statute prohibits, namely, the preference of one claimant who has performed labor or furnished materials for the improvement of property to another of the same class. In our opinion, the judgment of the district court conforms to the provisions of our Constitution and is in harmony with the former decisions of this court, and should therefore prevail.

The judgment is affirmed. Costs to respondent.

McCARTY and CORFMAN, JJ., concur.

THURMAN, J.

When this case was argued and submitted to the court, I had a strong impression, if not a conviction, that the judgment should be affirmed. The conflicting opinions of my Associates, Mr. Justice GIDEON and Mr. Chief Justice FRICK, left me in doubt, and impelled a more careful and painstaking investigation on my part, resulting in a conviction upon which I am now satisfied to rest my judgment.

This court has determined that our mechanic's lien law, as against a person entitled to a homestead at the time the lien attaches, is unconstitutional. *Volker, etc.,* v. *Vance,* 32 Utah, 74, 88 Pac. 896, 125 Am. St. Rep. 828. As against a person not entitled to a homestead at the time the specific lien attaches the law is not unconstitutional, and a homestead right acquired subsequent to the lien is, and should be, subject thereto. This proposition is, manifestly, in acord with common honestly as understood by honest people everywhere, and I believe it is sustained by the preponderance of judicial authority. Cyc., vol. 21, at page 513, says:

"According to the weight of authority, no homestead can be claimed if, at the time a lien attaches to the land, the debtor was not entitled to an exemption because he had not acquired the personal status giving him the privilege; but this rule is not universally followed and the contrary view is maintained in some jurisdictions." (The authorities pro and con are cited in the note.)

Boisot on Mechanics' Liens, section 142, says:

"But, where the land is not a homestead at the time the lien attaches, no subsequent act of the owner can create a homestead right superior to the lien."

See, also, Phillips, Mechanics' Liens (3d Ed.) sections 183a, 250, Bloom, Mechanics' Liens, p. 455, and other authorities too numerous to mention.

I find nothing in our Constitution, statutes, or judicial decisions calling for a different rule. While I am in favor of the utmost liberality in favor of homestead exemptions, I think this court has gone far enough, especially in the Vance Case, supra, in which Mrs. Vance's homestead was held exempt, even though she authorized the construction of the building. I, however, approve of the decision in that case, and think it is well sustained by judicial authority. There is more doubt as to whether the same would be true in the case of an ordinary judgment lien. As to that I express no opinion, because the question is not involved. My views upon this question are best expressed by Hon. D. N. Straup (then Chief Justice) in his opinion in the second appeal of the Vance Case (36 Utah 359, 103 Pac. 974, 24 L. R. A. [N. S.] 321, Ann. Cas. 1912A, 124), to wit:

"Whatever liberality should be given the construction of our homestead exemption laws, they ought not to be so construed as to give the debtor the power *by his own acts* to deprive others of rights previously obtained in his property." (Italics mine.)

I concur in the opinon affirming the judgment.

GIDEON, J.

I regret that I cannot agree with the unanimous conclusions of my Associates on the question involved on this appeal. Without stating at length my reasons therefor, suffice it to say that, in affirming the judgment, this court, in my opinion, is enlarging the purposes and objects of Comp. Laws 1907, section 1385, by giving to mechanics' liens rights not authorized by that section. A homestead exemption, when claimed by the head of a family, is a right guaranteed by the Constitution

of the state. The section in question provides that the lien mentioned therein shall relate back and take effect "as of the time of the commencement to do work upon and furnish materials on the ground for the structure or improvement and shall have priority over any lien or incumbrance subsequently intervening." Construing the terms of the section together, it would seem apparent that, while the lien relates back to the beginning of the work, it was not the intention that it should be superior or have priority over the right to claim a homestead as exempt, as guaranteed by the Constitution and provided for by Comp. Laws 1907, section 1147. In addition, in my judgment, the affirmance of the judgment, in effect, overrules the former decisions of this court in *Lumber Co.* v. *Vance,* cited in the majority opinion; *Folsom* v. *Asper* and *Solomon, Adm'rs,* 25 Utah 299, 71 Pac. 315, and the conclusions of the then Chief Justice in his concurring opinion in *Giesy-Walker Co.* v. *Briggs,* 49 Utah 205, 162 Pac. 881. Mechanics' liens exist only by virtue of the statute authorizing such liens, and without such statute the debts for which such liens are created do not differ from any other honest obligations.

I therefore dissent from the majority opinion.