## STUCKI v. ELLIS et al.

No. 7200.   Decided January 4, 1949.   (201 P. 2d 486.)

Rehearing Denied February 28, 1949.

See 40 C. J., Homesteads, sec. 19; 26 Am. Jur. 70; Estate or interest in real property to which homestead may attach, note, 89 A. L. R. 511.

*L. E. Nelson* and *George D. Peterson,* both of Logan, for defendant and appellant.

*Leon Fonnesbeck,* of Logan, for plaintiff and respondent.

LATIMER, Justice.

This is an action to foreclose a mechanic's lien. From a judgment for the plaintiff, one of the defendants, Thomas A. Tarbet, has appealed. We shall refer to the parties as they appeared below.

On October 16, 1945, defendant June S. Spackman, as owner of the premises in question, entered into a written contract with defendant James Ellis, whereby Mrs. Spackman agreed to sell and Mr. Ellis agreed to buy a small home in Logan, Utah. Under the agreement, Mr. Ellis made a down payment of four hundred dollars and agreed to pay the remaining six hundred dollars at the rate of ten dollars per month. Mr. Ellis, with his wife and children went into possession of the premises under this contract, but never acquired record title as this was retained by Mrs. Spackman until she and her husband deeded the premises to defendant Thomas A. Tarbet on March 1, 1946.

Shortly after defendant Ellis went into possession, the home was partially destroyed by fire. When he first attempted to engage the plaintiff to repair the damage that had been done, plaintiff declined. Some time in December, 1946, Mr. Ellis again approached the plaintiff stating that he had been turned down by others, that he was in dire need of having the work done, and that there was sufficient insurance on the house to pay for the repairs. Plaintiff testified that he then sent his foreman, Roy Earl, with Mr. Ellis to the office of defendant W. T. Stewart, a real estate agent who had handled the contract between Mrs. Spackman and Mr. Ellis, to investigate whether there was insurance to cover the cost of repairs. Roy Earl testified that upon arriving in Mr. Stewart's office Mr. Ellis explained to Mr. Stewart that he had no money to pay for the work to be done but understood the home was protected by fire insurance; and that Mr. Stewart's reply was that the premises were protected by insurance and that he would be glad to pay the bill for the repairs as soon as the work

was completed. Mr. Stewart flatly denied having had this conversation and further testified he had not become acquainted with Roy Earl until about February 15, 1946, at which time Mr. Earl and the plaintiff came to see him after he, Mr. Stewart, had refused to pay plaintiff's bill for the repairs.

On or about February 17, 1946, plaintiff attempted to contact Mr. Ellis regarding the matter but was unable to find any trace of him, and his whereabouts continued to remain unknown to the plaintiff from that time forward.

On February 25, 1946, defendant Ellis entered into a written contract with defendant Tarbet for the sale of Ellis' interest in the property. This agreement was made with the consent of the Spackmans, who still held the record title. As part of this transaction and on March 1, 1946, June S. Spackman and her husband Clare Spackman executed a warranty deed conveying the premises to defendant Thomas A. Tarbet for the sum of fifteen hundred dollars. The contract of purchase included the interests of Ellis and the Spackmans and the consideration paid was divided according to their respective interests. On March 15, 1946, plaintiff filed his notice of mechanic's lien as provided by statute. On March 23, 1946, Thomas A. Tarbet was married.

The court below entered a non-suit as against W. H. Stewart, but awarded a judgment foreclosing the mechanic's lien. Thomas A. Tarbet, the present owner, has appealed contending the judgment is erroneous for two reasons: (1) A mechanic's lien filed upon the premises when occupied by James Ellis would have been void inasmuch as the homestead exemption he could have asserted would preclude a foreclosure of the lien and under 38-0-2, U. C. A. 1943, Ellis' exemption runs with the transfer of the property to Tarbet. (2) Defendant Tarbet was a "head of a family" within the meaning of 38-0-5, U. C. A. 1943, at the time the mechanic's lien attached to the property and as such is able to assert a homestead exemption in his own right.

Plaintiff makes a cross-assignment of error contending the court below erred in granting a non-suit as to defendant Stewart. We do not pass upon this question because it is not before us in this appeal as no final judgment has been entered as to defendant Stewart. See *Watson* v. *Odell,* 53 Utah 96, 176 P. 619. Furthermore, the notice of cross-appeal is insufficient to identify with certainty any appealable order or judgment.

A statement concerning the manner and method of acquiring a homestead is appropriate here inasmuch as the plaintiff has argued that property becomes a homestead only after one entitled to assert a homestead exemption takes affirmative action to select or designate the property to be exempted; that the statute does not set up the homestead exemption against a mechanic's lien as it does against judgment liens; and, that a mechanic's lien is a lien on property which can only be defeated by affirmatively setting up the homestead claim.

Section 38-0-1, U. C. A. 1943, creates the homestead exemption in the following language:

"A homestead consisting of lands, appurtenances and improvements, which lands may be in one or more localities, not exceeding in value with the appurtenances and improvements thereon the sum of $2,000 for the head of the family, and the further sum of $750 for the spouse, and $300 for each other member of the family, shall be exempt from judgment lien and from execution or forced sale, except upon the following obligations: (1) taxes accruing and levied thereon; and (2) judgments obtained on debts secured by lawful mortgage on the premises and on debts created for the purchase price thereof."

Under the statute the lands consisting of the homestead are exempt from (1) Judgment lien and (2) execution or forced sale, and under our ruling in *Volker-Scowcroft Lumber Co.* v. *Vance,* 32 Utah 74, 88 P. 896, 125 Am. St. Rep. 828, a homestead is exempt from judgment and foreclosure of a mechani's lien by virtue of section 1, article 22, of the Constitution of this state.

Concerning whether the homestead exemption depends upon whether the homestead claimant has taken some affirmative action to designate or select it, we refer first to the case of *Kimball* v. *Salisbury*, 19 Utah 161, 56 P. 973. In that case, this court held that under the statute of 1896 which granted a homestead exemption upon lands and appurtenances to be selected by the judgment debtor, that the statute did not require the judgment debtor to formally select the premises he was using for his residence as a homestead, but that the selection of the homestead was sufficiently manifest by the fact of ownership, residence, use or occupation. In 1898 the legislature enacted into law Section 1149, which provided:

"Any person who is the head of a family may make a declaration of homestead in the manner provided in the next two sections, but a failure to make such declaration shall not impair the homestead right." Rev. St. 1898, § 1149.

In *Daniels* v. *Smith,* 51 Utah 144, 169 P. 267, this court held that under that statute the making and recording of a declaration of homestead is only important when the homestead is incumbered or conveyed by a married person who holds the title thereof without the consent of his spouse as provided in Section 1155, Comp. Laws 1907, and as pointed out in *Nielson* v. *Peterson,* 30 Utah 391, 85 P. 429, and that in all other cases a failure to declare the homestead shall not impair the homestead right. In the *Nielson* v. *Peterson* case, supra, defendant Peterson mortgaged premises claimed by himself and his wife as their homestead to plaintiff Nielson, who later brought suit to foreclose the mortgage after Peterson had defaulted in the payment of his indebtedness. On his failure to appear or answer, the court entered a default against Peterson, but his wife, who had not joined in the execution of the mortgage filed a complaint in intervention, alleging that the mortgaged premises were her home, were exempt as such, and that the mortgage executed by her husband was void under Section 1155, Comp. Laws 1907, because she had not joined in its execution. This court

there held that under Section 1155, which in substance provided that if an owner is married he may not convey or incumber or contract to convey or incumber the premises selected and recorded as a homestead prior to the time of such conveyance, incumbrance, or contract unless both spouses join in its execution, the fact that there was no declaration of homestead prior to the time Peterson executed the mortgage to Nielson would preclude his wife from taking advantage of the homestead that could otherwise be asserted.

Section 1149, Comp. Laws of 1907, is in substance identical with 38-0-10, U. C. A. 1943, which is the statute under which the rights and obligations of the present litigants are to be determined. Under this latter statute and our decisions in the foregoing cases, the homestead exemption exists independently of whether the claimant has made a formal declaration of his exemption except under the facts of the Peterson case. By purchasing, occupying and using the premises as a home for himself and family, Ellis sufficiently manifested that the property involved was his homestead. For other cases dealing with this subject see citations given in *Panagopulos* v. *Manning,* 93 Utah 198, 69 P. 2d 614.

Section 38-0-2, U. C. A. 1943, is relied upon by defendant Tarbet to preserve the homestead exemption upon transfer by the judgment creditor. This section provides as follows:

"When a homestead is conveyed by the owner thereof such conveyance shall not subject the premises to any lien or encumbrance to which it would not be subject in the hands of the owner; and the proceeds of the sale thereof, to the amount of the exemption existing at the time of sale, shall be exempt from execution or other process for one year after the receipt thereof by the person entitled to the exemption."

Defendant Ellis was entitled to assert a homestead exemption against plaintiffs mechanic's lien and if he conveyed the premises to defendant Tarbet, within the meaning

of this section, then plaintiff's lien cannot be foreclosed against the premises. It will be noted that the statute refers to a conveyance of the homestead by the owner. The facts concerning whether Mr. Ellis could qualify as an owner are that he purchased the premises from the Spackmans under a written contract, which at the time of the sale to Tarbet was recognized by Spackmans as being valid and enforceable. He and his family were occupying the premises as a home so that plaintiff had notice that Ellis had an interest in the premises even though not of record. The facts establish an equitable interest in Ellis and that an equitable owner of land is entitled to assert a homestead exemption was our ruling in *Hansen* v. *Mauss,* 40 Utah 361, 121 P. 605. That decision coincides with the prevailing rule in this country. (See the annotation in 89 A. L. R. 531.)

The remaining question is whether defendant Ellis "conveyed" the premises to defendant Tarbet so that he, Tarbet is now entitled to rely upon 38-0-2, U. C. A. 1943, to defeat plaintiff's mechanic's lien. In attempting to determine whether there was a conveyance of the premises by Ellis to Tarbet within the meaning of the law, we turn to 78-1-1, U. C. A. 1943, for a definition of the term "conveyance" as applied to real property in this jurisdiction. That statute reads as follows:

"The term 'conveyance' as used in this title shall be construed to embrace every instrument in writing by which any real estate, or interest in real estate, is created, aliened, mortgaged, encumbered or assigned, except wills, and leases for a term not exceeding one year."

The best method Mr. Ellis could have used in conveying his interest in the premises to defendant Tarbet would have been by deed. But under our broad statutory definition of the term "conveyance," an interest in real property may be conveyed without the use of a deed. Defendant Tarbet's exhibit 1, which is a written instrument prepared and used by the Stewart Real Estate Company, and signed by Mr. Ellis, reads as follows:

"Logan, Utah, Feb. 25, 1946

"Received of Thos. A. Tarbet the sum of eight hundred dollars as a deposit on the purchase of James Ellis property at #459 West Center St., Logan, Utah.

"The agreed purchase price is fifteen hundred dollars, payable on the following terms: the balance to be paid as follows: by assuming mortgage or contract for $700.00 payable four years after date.

"SUBJECT TO APPROVAL OF     STEWART REAL ESTATE CO.
THE OWNER
"I agree to above:
"Thomas A. Tarbet                By W. T. Stewart

---

"Purchaser       (signed)                         (signed)
"I agree to above:
"James C. Ellis

---

"Owner           (signed)"

We hold that the above instrument, when considered in connection with full payment by Tarbet to both the equitable and legal owner, together with a warranty deed executed by the legal owner, is sufficient to convey and transfer both interests and that Section 78-1-1, U. C. A. 1943, protects the homestead exemption in the hands of the purchaser.

Our ruling sustaining defendant's first assignment of error makes a decision on the second question unnecessary. The judgment foreclosing plaintiff's mechanic's lien is reversed. Costs to appellant.

PRATT, C. J., and WADE and McDONOUGH, JJ., concur.


WOLFE, Justice (concurring).

I regret that Stucki, after being importuned to rebuild the home inhabited by Ellis and thus who actually created the homestead at least in part should be unable to exact payment for the labor and materials used. I have some doubt

as to the soundness of that part of *Volker-Scowcroft Lumber Co. v. Vance,* 32 Utah 74, 88 P. 896, 125 Am. St. Rep. 828, which held that Section 1156, Rev. St. 1898, providing for a mechanic's lien on homesteads was unconstitutional. But there is evidently authority for such holding and it has long been the law of this state. I have no inclination to add a dissenting opinion. But I desire to express a vigorous conviction that justice would be better served if a materialman or mechanic would be given recourse to the homes that he helped create even though they were homesteads. It happens in this case that Tarbet innocently parted with his money to purchase the home for his family so we have the hard case where one of two innocent purchasers must lose. And since the law has been that no mechanic's or materialman's lien may constitutionally be placed on a homestead, we may console ourselves in this case with the knowledge that both builder and purchaser acted in view of the law as it existed and that under such situation, the builder is the one who should lose.