**2017 UT App 140**

## THE UTAH COURT OF APPEALS

DEAN WHITE,
Appellant,
*v.*
JULIE DAWN WHITE,
Appellee.

Opinion
No. 20160273-CA
Filed August 3, 2017

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 094401518

Dean White, Appellant Pro Se

Terry R. Spencer, Attorney for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE
KATE A. TOOMEY concurred. JUDGE J. FREDERIC VOROS JR.
concurred, with opinion. [1]

ROTH, Judge:

¶1      As part of the division of marital property in divorce
proceedings, the district court awarded Dean White all interest
in a limited liability company, which owned a residential
property as its only asset. The primary issue on appeal is
whether the district court properly denied Dean's claim to a
homestead exemption in proceeds from the later sale of that
residence. Dean also raises an issue regarding the allegedly
improper service of pleadings upon him, and he requests an

---

1. Judges Stephen L. Roth and J. Frederic Voros Jr. participated
in this case as members of the Utah Court of Appeals. They
retired from the court before this decision issued.

award of attorney fees on appeal. We affirm the district court's judgment and deny the request for attorney fees.

BACKGROUND

¶2     Dean White and Julie Dawn White[2] divorced in February 2010. Several years before their divorce, the parties purchased a rental property in Lehi, Utah (the Property). In 2007, the parties formed a limited liability company known as "The White Empire, LLC" (the LLC), having the parties as its only members. They then transferred ownership of the Property to the LLC.

¶3     The divorce decree awarded the LLC and "all right, title and interest" in the Property to Dean, and he began residing in the Property. Dean removed Julie as a member of the LLC, but the Property remained titled in the LLC's name, with Dean as the sole member.

¶4     Between the entry of the divorce decree in early 2010 and November 2015, the district court entered various judgments against Dean totaling approximately $53,000. Dean failed to satisfy those judgments.

*The Charging Order*

¶5     In an attempt to recover on the judgments, Julie filed a motion in November 2015 seeking a charging order against Dean's interest in the LLC pursuant to section 48-3a-503 of the Utah Revised Uniform Limited Liability Company Act. The charging order would have, if granted, effectively placed a lien upon Dean's membership interest in the LLC. *See* Utah Code

---

2. Because the parties share the same last name, we refer to them by their first names for clarity.

Ann. § 48-3a-503(1) (LexisNexis 2015).[3] Julie requested that the court order the foreclosure of the lien and the sale of Dean's interest in the LLC if he did not satisfy her judgments against him within thirty days.

¶6 Dean responded that the Property was subject to a homestead exemption pursuant to Utah Code sections 78B-5-503 and -504. He represented that he had filed a Homestead Exemption Declaration against the Property about two weeks after Julie filed her motion. In the declaration, he claimed the Property as his primary personal residence, which entitled him under the statute to a $30,000 exemption from judicial liens, execution, or forced sale. Dean asserted that taking into account the mortgage on the Property, its net value amounted to approximately $28,000, or less than the $30,000 statutory cap.

---

3. Utah Code section 48-3a-503 provides,

> On application by a judgment creditor of a member or transferee [of a limited liability company], a court may enter a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment. Except as otherwise provided in Subsection (6), *a charging order constitutes a lien on a judgment debtor's transferable interest* and, after the limited liability company has been served with the charging order, requires the limited liability company to pay over to the person to which the charging order was issued any distribution that otherwise would be paid to the judgment debtor.

Utah Code Ann. § 48-3a-503(1) (LexisNexis 2015) (emphasis added). This section further provides that a charging order "does not deprive any member or transferee of the benefit of any exemption laws applicable to the transferable interest of the member or transferee." *Id.* § 48-3a-503(7).

And, according to Dean, because the Property was the LLC's only asset, his homestead exemption prevented Julie from executing on his LLC membership to recover any portion of her judgments against him.

¶7     In January 2016, before the hearing scheduled on Julie's charging order motion, the LLC sold the Property. Dean then dissolved the LLC. As the LLC's sole member, Dean received the $8,621.30 in net proceeds from the sale.

¶8     Julie filed a motion asserting that the sale of the Property amounted to a fraudulent transfer under the Utah Fraudulent Transfer Act and requesting that the court either void the sale or "issue a writ of garnishment on any account held in [Dean's] name to which [Dean] transferred any of the sale proceeds" to allow her to collect on the judgments against him. Dean argued in response that the court should dismiss Julie's request for a charging order because the LLC had been dissolved and the sale proceeds were covered by the homestead exemption, which left Julie with nothing from which to recover.

¶9     The assigned commissioner held a hearing on the parties' motions. The commissioner determined that the sale of the Property was fraudulent and conducted in bad faith. The commissioner also determined that Dean was not entitled to a homestead exemption, because the Property was held in the LLC's name, not his, and because a homestead exemption could not be claimed "against a former spouse." The commissioner recommended that Dean be ordered to pay Julie all net proceeds from the sale of the Property.

¶10     Dean objected to the commissioner's recommendation and requested a hearing before the district court. The district court entered an order accepting the commissioner's recommendations but also scheduled a hearing regarding Dean's objections. At the objection hearing, Dean argued that he was entitled to a homestead exemption on the sale proceeds because

the Property was his primary personal residence. He also contended that the identity of a home's titleholder or owner is irrelevant because the homestead exemption statutes do not "make any restrictions on who the owner is, who the house is titled to, anything of that nature." Julie responded that the commissioner correctly determined that Dean was not entitled to a homestead exemption because the Property "was in the name of a company" that Dean owned, not Dean himself. She also argued that according to our holding in *Wiles v. Wiles*, 871 P.2d 1026 (Utah Ct. App. 1994), "a homestead exemption doesn't apply in a domestic case."

¶11 The district court denied Dean's objection, concluding that because the Property was not in Dean's name, he was not entitled to a homestead exemption in the Property or in the proceeds from its sale. The court also agreed that *Wiles* precluded Dean from claiming a homestead exemption in connection with divorce proceedings.

*The Improper Service Allegation*

¶12 Dean alleges that Julie failed to properly serve him one legal memorandum and two proposed orders, all related to the district court's ultimate determination that he was not entitled to the exemption. The memorandum to which he refers was Julie's reply to his assertion of the homestead exemption. In it she argued that *Wiles* precluded the homestead exemption from being used against ex-spouses. The two proposed orders were submitted by Julie following, respectively, the charging order hearing before the commissioner and the hearing before the district court on Dean's objection to the commissioner's recommendation.

¶13 Dean asserts that he notified both the commissioner and the district court that he had not received the legal memorandum or the proposed orders from Julie and requested that she be ordered to provide verification that she had served

them. Dean contends that neither the commissioner nor the district court required Julie to provide verification and that, as a result, neither "ever received . . . evidence to validate that the emails were actually sent."

¶14 Dean appeals both the district court's determination that he was not entitled to the homestead exemption and its refusal to require Julie to provide verification that she sent him the pleading and two proposed orders.

ISSUES AND STANDARDS OF REVIEW

¶15 Dean argues that the district court erred when it determined that he was not entitled to a homestead exemption on the Property. The determination of whether a claimant is entitled to a homestead exemption is a question of law, which we review for correctness. *See Houghton v. Miller*, 2005 UT App 303, ¶ 5, 118 P.3d 293. Dean also challenges the district court's alternative determination that under our decision in *Wiles v. Wiles*, 871 P.2d 1026 (Utah Ct. App. 1994), a homestead exemption cannot be asserted "against a former spouse." Because we resolve the exemption issue on the first ground, we do not reach the *Wiles* issue.

¶16 Next, Dean argues that the district court erred when it failed to require Julie to produce verification that she had served him with certain pleadings. We review this kind of decision for abuse of discretion. *Cf. Cabaness v. Thomas*, 2010 UT 23, ¶ 31, 232 P.3d 486 (explaining that we review a "district court's refusal to consider evidence or to exclude evidence" for abuse of discretion). However, to merit relief, Dean must do more than simply allege error; he must also demonstrate that the alleged error was harmful. *See Portfolio Recovery Assocs., LLC v. Migliore*, 2013 UT App 255, ¶ 15, 314 P.3d 1069.

¶17 Finally, Dean requests that, should he prevail, we award him attorney fees and costs on appeal and reverse the district court's award of attorney fees in Julie's favor. Julie also requests her fees and costs on appeal if she prevails on the basis that she prevailed and was awarded fees below. Because Dean is appearing pro se, he is not entitled to an award of attorney fees. *See Osborne v. Osborne*, 2011 UT App 150, ¶ 10, 260 P.3d 202 (explaining that a "pro se litigant . . . is not entitled to an award of attorney fees"). Otherwise, a trial court's decision to grant or deny attorney fees in a domestic case is within its "sound discretion." *See Davis v. Davis*, 2003 UT App 282, ¶ 9, 76 P.3d 716 (citation and internal quotation marks omitted). "Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Fish v. Fish*, 2016 UT App 125, ¶ 30, 379 P.3d 882 (citation and internal quotation marks omitted).

ANALYSIS

I. The Homestead Exemption

¶18 There is no homestead exemption in the common law; homestead rights are instead the product of legislation and are therefore governed by statute—in Utah, the Utah Exemptions Act (the Act). *See* Utah Code Ann. §§ 78B-5-503 to -504 (LexisNexis 2012); *P.I.E. Emps. Fed. Credit Union v. Bass*, 759 P.2d 1144, 1145 (Utah 1988). "The general purpose of a homestead exemption is to protect citizens and their families from the miseries of destitution" through "execution or forced sale" of property that is either owned or occupied by the claimant. *P.I.E. Emps.*, 759 P.2d at 1145. The exemption also "giv[es] the homestead claimant the right to claim proceeds of the sale of his homestead as exempt for a period of one year from the receipt thereof . . . to permit him to acquire another homestead and to pay therefor with such proceeds." *Homeside Lending, Inc. v.*

*Miller*, 2001 UT App 247, ¶ 28 n.6, 31 P.3d 607 (emphasis, citation, and internal quotation marks omitted).

¶19    Dean contends that the district court erred when it determined that he was not entitled to a homestead exemption. Dean argues that he fulfilled all the statutory requirements for the exemption by occupying the Property as his primary personal residence and that "who or what the property was titled to" is irrelevant.

¶20    Dean asserts that he qualifies for an exemption under the "primary personal residence" provision of Utah Code section 78B-5-503(2)(a):

> An individual is entitled to a homestead exemption consisting of property in this state in an amount not exceeding: (i) $5,000 in value if the property consists in whole or in part of property which is not the primary personal residence of the individual; or (ii) $30,000 in value *if the property claimed is the primary personal residence of the individual*.

Utah Code Ann. § 78B-5-503(2)(a) (emphasis added). Dean asserts that he fulfilled "all the criteria" of section 503(2)(a)(ii), "regardless of who or what the Property was titled to," because the Property was his "primary personal residence; real property; and [he] had all interest in the real property because it was awarded to [him] in the divorce decree."

¶21    It is true that the exemption may attach to either "title" or "possession." *Panagopulos v. Manning*, 69 P.2d 614, 619 (Utah 1937) (explaining that there "are two bases or interests in real property upon which a homestead right may be predicated and which may give rise to claim of homestead—title and possession," and that "[t]he homestead exemption protects alike both of the interests, and may be founded or asserted to protect

either one"). But the homestead exemption protects "a right of sufficient value to be coveted by creditors," one that "can be sold under execution." *See id.* As the supreme court explained in *Panagopulos*, "a mere naked possession without any title whatever, will support a homestead right against all the world except the owner, on the principle that a right of sufficient value to be coveted by creditors is of value to the debtor sufficient to be protected." *Id.*

¶22     Thus, as we explain below, the homestead exemption is a personal right based upon an individual's interest in property. This requires that the exemption be claimed by a person as opposed to an entity and that the person claiming the exemption have a legally cognizable interest or estate in the subject property. To prevail on appeal, Dean must therefore persuade us that the fact that the LLC owned and held title to the Property had no bearing on his ability to personally claim the Property as his homestead. Here, although Dean himself qualifies as an "individual" under the Act, the LLC, not Dean, owned the Property at all relevant times, and he has failed to persuade us that he had a sufficient interest in the Property and the proceeds from its sale to entitle him to the exemption.

A.     Ownership of the Property

¶23     The district court ruled that under the Act, Dean was not entitled to a homestead exemption claim where the Property was in the LLC's name, not Dean's. Dean contends that the LLC's title is irrelevant to his entitlement to the exemption. But Dean does not contest that the LLC was the owner of the Property. And we conclude that the identity of the owner is relevant because the Act's plain language limits entitlement to the exemption to a person, not an entity.

¶24     "It is well settled that when faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose of the Legislature," and "[t]he best evidence

of the legislature's intent is the plain language of the statute itself." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citations and internal quotation marks omitted). The plain language of the Act makes clear that the exemption can be claimed only by a human being; it is not designed to protect a business entity from creditors. This is evident from the Act's repeated use of the term "individual" to describe who is entitled to the exemption. *See Hutter v. Dig-It, Inc.*, 2009 UT 69, ¶ 32, 219 P.3d 918 ("When interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning."). Although the Act does not define the term "individual," the noun "individual" is reasonably understood as "a single human being, as distinguished from a group." *Individual*, Dictionary.com, http://www.dictionary.com/browse /individual [https://perma.cc/3AEF-6MSX]. And Garner's Dictionary of Legal Usage explains that "*individual* is best confined to contexts in which the writer intends to distinguish the single (noncorporate) person from the group or crowd." *Individual*, Garner's Dictionary of Legal Usage 448 (3d ed. 2011).

¶25   Other provisions of the Act itself make it indisputable that the "individual" who may claim the exemption is not an entity. *Sill v. Hart*, 2007 UT 45, ¶ 7, 162 P.3d 1099 (explaining that we "read the plain language of a statute . . . as a whole and interpret its provisions in harmony with other provisions in the same statute" (ellipsis in original) (brackets, citation, and internal quotation marks omitted)). For example, the Act provides that "[a]n *individual* is entitled to a homestead exemption" up to $30,000 in value "if the property claimed is the primary *personal* residence of the individual." Utah Code Ann. § 78B-5-503(2)(a)(ii) (LexisNexis 2012) (emphases added). It defines "primary personal residence" as "a dwelling or mobile home . . . *in which the individual and the individual's household reside*" and then defines "household" as "a group of *persons* related by blood or marriage living together in the same dwelling." *Id.* § 78B-5-

503(1)(a), (c) (emphases added). While a human being can reside with persons to whom he or she is related, an entity, such as a company, cannot. And an LLC is a business entity, not an "individual" who is part of "a group of persons related by blood or marriage." Thus, the ordinary, nontechnical meaning of the term "individual," as employed in the relevant portions of the Act, plainly refers to a human being—a person—and not a company such as the LLC.

¶26    As a result, Dean's argument that the LLC's ownership of the Property was irrelevant fails. Because the LLC holds title and is the owner of the Property, Dean cannot claim entitlement to the exemption based upon title ownership. The LLC itself did not qualify as an "individual" under the Act and therefore could not claim entitlement to the exemption. And although Dean had an interest in the LLC through his membership, Dean does not claim that he had any ownership interest in the Property by virtue of his membership in the LLC, and the purposeful attenuation of the relationship between the property of an LLC and its members would seem to preclude it. *Cf. CFD Payson, LLC v. Christensen*, 2015 UT App 251, ¶ 9, 361 P.3d 145 (explaining that under the repealed Utah Revised Limited Liability Company Act, which was in effect at the time Dean and Julie formed the LLC, a company formed under the act was a "legal entity distinct from its members" and that "[a] membership interest in an LLC . . . does not give the member any interest in the real property owned by the company" (citations and internal quotation marks omitted)). As a result, Dean could not claim entitlement to the exemption through his ownership of the LLC.[4]

---

4. Dean also argues that, as a matter of good policy, we ought to nonetheless interpret the homestead exemption's statutory provisions liberally "'to accomplish its beneficent purpose.'" (Quoting *In re Cornia*, No. 13-22364, 2013 WL 1788053, at *3 (Bankr. D. Utah Apr. 26, 2013).) But because "the plain

(continued…)

B.     Possession of the Property

¶27     Dean nevertheless argues that even if he had no title or ownership, his possession and use of the Property as his residence established an interest sufficient to support a homestead exemption claim.

¶28     While we do not entirely foreclose the possibility that a debtor in bare possession of property as a residence might theoretically call on the protection of the Act against a creditor who seeks to execute on whatever interest such possession might represent, we have been unable to find a single case in Utah—nor has Dean pointed us to any—where mere occupancy alone, without some accompanying interest or estate in the property, was sufficient to support an exemption claim. Rather, even in cases where occupancy appears to be the basis of the claimant's entitlement, the claimant has had an interest in the property beyond simple occupancy.

---

(…continued)

language . . . is unambiguous, no other interpretive tools are needed, and our task of statutory construction is . . . at an end." *State v. Outzen*, 2017 UT 30, ¶ 12 (second ellipsis in original) (citation and internal quotation marks omitted); *see also Tesla Motors UT, Inc. v. Utah Tax Comm'n*, 2017 UT 18, ¶ 38 (explaining that "[t]he breadth and reach of our laws are measured by the words that were voted on by the legislature and signed into law by the governor—not by the general function or purpose we may ascribe to the law in retrospect" and that while "[w]e may have a sense of the motivating consideration or 'purpose' of a legislative enactment, . . . it is at most an aid in resolving ambiguities in the law" (emphases omitted)); *Wilcox v. CSX Corp.*, 2003 UT 21, ¶ 8, 70 P.3d 85 (explaining that we will only "seek guidance from the legislative history and relevant policy considerations" if "we find the provision ambiguous" (citation and internal quotation marks omitted)).

¶29 For example, our supreme court has determined that "where title is not in the debtor, but possession is," "possession under a lease will sustain a claim of homestead whether the leasehold is for a long tenure or but a single year," because "an owner of the leasehold estate is an owner of land" and the leasehold's purpose is "to secure [a person's] family a home." *See Panagopulos v. Manning*, 69 P.2d 614, 619 (Utah 1937) (citation and internal quotation marks omitted). In *Panagopulos*, although the debtor owned a remainder interest in the property that he occupied, the property itself was subject to a life estate in another person, and the debtor paid to the life-estate holder an annual rent for his use. *See id.* at 619–20. The supreme court concluded that the debtor was entitled to an exemption under these circumstances, "as long as he has exclusive occupancy of the premises as his home." *See id.* at 620.

¶30 Similarly, in *Stucki v. Ellis*, 201 P.2d 486 (Utah 1949), the court addressed whether a person who did not hold record title was nonetheless entitled to claim a homestead exemption in the proceeds of the property's sale. *Id.* at 489. A potential homestead exemption claimant had entered into a written purchase contract with the title owner, and the agreement required him to pay the balance of the purchase price in monthly installments before he would receive title to the property. *Id.* at 487. The claimant "went into possession of the premises under this contract." *Id.* Thereafter, the claimant, having never acquired title, sold the property to another, and "the consideration paid was divided according to [the buyer and seller's] respective interests" at the time of the sale. *Id.* at 488. The court concluded that under these circumstances, the claimant had an "equitable interest" in the property sufficient to claim a homestead exemption in his portion of the proceeds. *Id.* at 490. Although the claimant did not hold record title, he had acquired sufficient interest where he "purchased the premises . . . under a written contract," which was recognized by the original seller "as being valid and enforceable," and he "occup[ied] the premises as a home" with

his family. *See id.* at 489–90; *see also Hansen v. Mauss*, 121 P. 605, 607–08 (Utah 1912) (concluding that "a homestead may be carved out of an estate less than a fee simple," and that a person is entitled to an exemption as to the proceeds of a property's sale where he had entered into a purchase agreement for the property, made payments that created some equity in the property, and occupied the property with his family, even though he did not hold legal title to the property at the time of the property's later sale).

¶31    In the present case, Julie sought to recover her judgments by levying on Dean's membership interest in the LLC, which held title to the Property; she did not seek to execute on whatever interest Dean might have had in the Property as a result of his possession of it. Nonetheless, Dean apparently claims entitlement to the exemption on the sale proceeds due to his occupancy of the Property. But by the time the district court ruled on the homestead exemption issue, Dean had vacated the Property. Dean has failed to identify any interest he held in the Property prior to sale or in the sale proceeds apart from his earlier occupancy of the Property. In particular, he has failed to provide any evidence that his interest in the Property as an occupant, apparently with permission of the LLC, had any legal substance or tangible value separate from the LLC's ownership that survived his relinquishment of possession as of the time of sale. *Cf. Stucki*, 201 P.2d at 489–90; *Panagopulos*, 69 P.2d at 619–20.

¶32    Instead, to support his homestead claim, Dean has handpicked general quotes relating to possession and occupancy from several exemption cases without explaining their applicability to the circumstances of his case or otherwise providing any meaningful analysis. For example, he quotes *Houghton v. Miller*, 2005 UT App 303, 118 P.3d 293, for the bare proposition that "the occupancy of the premises . . . gives rise to the homestead claim." *See id.* ¶ 7 (citation and internal quotation marks omitted). But *Houghton* did not hold that occupancy of a property alone is sufficient; rather, we concluded in *Houghton*

"that occupancy is a requirement for the [primary personal residence] exemption," whereby "*a property owner* must reside on the premises" to be entitled to the exemption. *See id.* ¶ 10 (emphasis added) (citation and internal quotation marks omitted). Dean also cites *In re Cornia*, No. 13-22364, 2013 WL 1788053 (Bankr. D. Utah Apr. 26, 2013), for the proposition that a person "is entitled to claim a homestead exemption . . . as long as it is his primary personal residence." *See id.* at *3. But in that case, the court determined that the debtor held an equitable interest in the property as a beneficiary of the trust, which held legal title, sufficient to invoke the personal property residence exemption. *See id.* And Dean has not attempted to liken his ownership interest in the LLC to an equitable interest in the trust's subject matter sufficient for the exemption. Thus, the cases Dean relies on do not support his position.

¶33     And the fact that the homestead Dean now claims is in the proceeds of the Property's sale rather than in the Property itself does not change the result. Section 78B-5-503(5)(b) provides that "[t]he proceeds of any sale, *to the amount of the exemption existing at the time of sale*, is exempt from levy, execution, or other process for one year after the receipt of the proceeds *by the person entitled to the exemption*." Utah Code Ann. § 78B-5-503(5)(b) (LexisNexis 2012) (emphases added). Dean has not demonstrated any legal interest in the Property at the time of sale separate from the LLC's ownership that would entitle him to an exemption personally. And he has not argued that he had some individual interest in the proceeds more tangible than whatever homestead he may have claimed based on his bare occupancy of the Property as a residence up to the time of sale. Rather, below and on appeal, Dean has simply argued that, because the proceeds of roughly $8,000 were below the $30,000 cap on the value of the homestead exemption applicable to property used as a primary residence, they are unavailable to satisfy any judgment. But this argument presupposes that Dean had established a legal interest in the Property separate from the LLC's—one sufficient to

provide him with some claim to the LLC's proceeds. As we have explained, he has not done so. Accordingly, we are not persuaded that Dean has any interest in the proceeds of the sale to which a claim of homestead could attach.

¶34    In sum, Dean has not shown that he was entitled to claim a homestead exemption in either the Property or the proceeds of its sale that would shield all or any portion of them from Julie's attempts to recover her judgments against him. We therefore affirm the district court's determination that Dean did not qualify for the homestead exemption due to the LLC's title ownership of the Property.

## II. Improper Service

¶35    Dean next argues that Julie "failed to serve several papers and pleadings" on him. He cites one memorandum and two proposed orders, all three apparently related to the district court's ultimate decision to rule in Julie's favor on the homestead exemption issue. He argues that he requested that both the commissioner and the district court require Julie to produce verification that the pleadings were sent to him via email but that "[n]either the Judge nor Commissioner has ever received some form of evidence to validate that the emails [with the pleading and proposed orders] were actually sent." However, Dean does not identify any relief he seeks, nor does he allege any harm he suffered as a result. Rather, he argues that he requested verification of service of certain documents and the court never received any such verification from Julie. But "we will not reverse a judgment merely because there may have been [an] error; reversal occurs only if the error is such that there is a reasonable likelihood that, in its absence, there would have been a result more favorable to the complaining party." *Portfolio Recovery Assocs., LLC v. Migliore*, 2013 UT App 255, ¶ 15, 314 P.3d 1069 (citation and internal quotation marks omitted).

¶36 As a result, Dean must demonstrate that he suffered harm from the district court's failure to require Julie to provide verification of service. *See id.* He has not even attempted to do so. We recognize that Dean is appearing pro se, and we therefore accord him "every consideration that may reasonably be indulged." *See Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 3, 241 P.3d 375 (citation and internal quotation marks omitted). Nonetheless, we cannot carry his burden of persuasion for him. Therefore, we are unable to conclude that "any abuse of discretion by the district court in denying [his] request" would merit reversal. *See Portfolio Recovery Assocs.*, 2013 UT App 255, ¶ 15.

### III. Attorney Fees

¶37 Finally, Dean requests that we award him attorney fees on appeal, "reverse the fees awarded [to Julie], and award them in [his favor], as a deduction against previous judgments that [Julie] is trying to collect." As we explained above, *see supra* ¶ 17, Dean has appeared pro se and is therefore not entitled to an award of attorney fees. We decline his request for fees on that basis. *See Osborne v. Osborne*, 2011 UT App 150, ¶ 10, 260 P.3d 202 (explaining that a "pro se litigant . . . is not entitled to an award of attorney fees"). Further, we decline to disturb the court's award of fees to Julie below. "The decision to award attorney fees and the amount thereof rests primarily in the sound discretion of the trial court." *Wall v. Wall*, 2007 UT App 61, ¶ 24, 157 P.3d 341 (citation and internal quotation marks omitted). The district court awarded fees to Julie on the basis of Dean's bad faith, a determination that Dean has not challenged on appeal. The court's decision therefore stands.

¶38 Julie also requests her fees on appeal. Julie prevailed below, and the district court awarded her fees based upon

Dean's bad faith. We therefore award Julie her fees on appeal.[5] *See Fish v. Fish*, 2016 UT App 125, ¶ 30, 379 P.3d 882 ("Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." (citation and internal quotation marks omitted)); *see also Bresee v. Barton*, 2016 UT App 220, ¶ 66, 387 P.3d 536 (awarding attorney fees on appeal to the prevailing party where they were "awarded fees under the bad-faith attorney fee statute . . . below and have prevailed on that issue on appeal").

CONCLUSION

¶39    We conclude that the district court did not err when it determined that Dean was not entitled to a homestead exemption on the Property or the proceeds from its sale. We also conclude that the district court did not abuse its discretion when it failed to request from Julie verification of proof of service for certain pleadings. Finally, we award Julie her attorney fees and costs on appeal. Affirmed.

———————

VOROS, Judge (concurring):

¶40    I concur with the majority opinion. I write only to identify the fatal flaw in Dean's argument as I see it.

¶41    Dean claims a homestead exemption. Under the Utah Exemptions Act, "'exemption' means protection from subjection

———

5. Julie also requests that we "classify all attorney's fees due and owing in this case as 'family support,' so that the sums may be garnished from Dean's income." Julie has provided no legal basis for this request on appeal. However, the court on remand may, in its discretion, address the issue.

to a judicial process to collect an unsecured debt." Utah Code Ann. § 78B-5-502(3) (LexisNexis 2012). Thus, to be *exempt* from execution, an interest must be of the sort that is *subject* to execution. And I cannot see that Dean held any interest in the Property that would be subject to execution. Dean does not claim a freehold estate, a leasehold estate, a future interest, an easement, an equitable interest under a purchase contract, or a beneficial interest under a trust. At most, he was a tenant at will. A tenancy at will could conceivably have some negligible value. *See, e.g.*, *Utah Optical Co. v. Keith*, 56 P. 155, 158 (Utah 1899). But Dean has placed no evidence before the court of what that value might be.

¶42 In any event, the subject of this dispute is not the proceeds of the sale of the Property but the proceeds of the dissolution of the LLC. An LLC is, of course, "an entity distinct from its member or members." Utah Code Ann. § 48-3a-104(1) (LexisNexis 2015). And here, the LLC, not Dean himself, owned the Property. Julie obtained a charging order against Dean's transferable interest in the LLC, *see id.* § 48-3a-503. A member's interest in an LLC is a "transferable interest," and a "transferable interest is personal property." *See id.* § 48-3a-102(29); *id.* § 48-3a-501. The homestead exemption's reach does not extend to personal property but is limited to interests in real property, related water rights, a mobile home in which the claimant resides, and the proceeds of the sale of exempt property for one year. *See id.* § 78B-5-503 (LexisNexis 2012). Thus, the homestead exemption does not protect a transferable interest in an LLC.[6]

¶43 In short, Dean held no interest in real property subject to execution and thus no interest in real property needing protection from execution. He held an interest in an LLC, which

---

6. The Utah Exemptions Act does protect specified personal property, but under provisions not at issue here. *See, e.g.*, Utah Code Ann. § 78B-5-505 (LexisNexis 2012).

is personal property; the homestead exemption does not protect personal property; therefore, it does not protect Dean's interest in the LLC.

––––––––––