2018 UT App 38

# THE UTAH COURT OF APPEALS

LISA EMILY BOND,
Appellant,
*v.*
MARK EDWARD BOND,
Appellee.

Opinion
No. 20160598-CA
Filed March 15, 2018

Second District Court, Farmington Department
The Honorable Glen R. Dawson
No. 144701018

David O. Black, Attorney for Appellant

Cory R. Wall, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
KATE A. TOOMEY and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1    After a four-day divorce trial, the court ordered Mark Bond (Mark) to pay $2,350 per month in alimony to Lisa Bond (Lisa).[1] As part of its alimony calculation, the trial court imputed to Lisa a monthly income of $600. Lisa appeals, asserting that the trial court erred by imputing any income to her at all, and contending that the alimony award therefore should have been larger. Because the trial court's findings regarding imputation of income were supported by competent evidence, we affirm.

---

1. Consistent with our practice in cases where both parties share a surname, in this opinion we refer to the parties by their first names, with no disrespect intended by the apparent informality. *See, e.g.*, *Smith v. Smith*, 2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

BACKGROUND

¶2     Lisa and Mark married in 1989. In 1995, Lisa was diagnosed with multiple sclerosis (MS). Despite this diagnosis, Lisa continued to work—sometimes part-time, sometimes full-time—as a travel agent until approximately 2012. At that time, Mark and Lisa made a mutual decision that Lisa should quit her job. At trial, Mark testified that, around that time, Lisa was experiencing stress at work, and that this stress was related to both office-specific conflicts as well as the general difficulties inherent in working while afflicted with MS. During her testimony, Lisa clarified that, around that time, she had made some errors at work, that these errors caused her stress, and that the stress made her MS symptoms worse. Mark and Lisa were also aware that Lisa would likely qualify for Social Security disability benefits. For all of these reasons, Mark and Lisa agreed that Lisa should stop working and instead apply for Social Security benefits. For the remainder of their marriage, Lisa did not work outside the home.

¶3     Lisa petitioned for divorce in July 2014, and the case went to trial in early 2016. The main issue at trial was whether, and to what extent, Lisa should be awarded alimony. The parties disagreed about many of the specific factors relevant to the alimony analysis, including whether Lisa was physically able to be gainfully employed and, accordingly, whether any income should be imputed to her. For her part, Lisa testified that, due to her MS diagnosis, she was physically unable to engage in gainful employment at all. Lisa also presented testimony from her treating provider (Nurse Practitioner), a nurse practitioner who worked in the MS clinic at the University of Utah and who had been treating Lisa for her MS since 2003. Nurse Practitioner testified that patients with MS often struggle to maintain employment, and that MS can make it so that they "just cannot function" in the workplace. Nurse Practitioner offered her opinion that Lisa was in this category, and was physically

unable to return to the workforce in any capacity due to her MS.[2] However, Nurse Practitioner conceded on cross-examination that Lisa was capable of operating a computer and a telephone, capable of driving a car and traveling, and was generally able to complete basic activities of daily living.

¶4    During his case-in-chief, Mark presented the testimony of a vocational rehabilitation counselor (Expert) to testify about Lisa's ability to work. Expert testified that she had significant experience evaluating individuals with disabilities generally, and evaluating individuals with MS specifically. Expert offered her opinion that, despite Lisa's disabilities, Lisa would be able to work on a part-time basis in a "sedentary occupation" so long as her employer made "reasonable accommodations." Expert offered three specific examples of jobs that she believed Lisa could perform—a reception information clerk, a hotel desk clerk, or a reservation and ticket agent—and testified that wages in these types of jobs ranged from $9.61 to $12.87 per hour. On cross-examination, Expert conceded that Lisa would have difficulty working a normal eight-hour work shift, and that her recommendation was that Lisa work only "part-time." Expert did not further define "part-time," but conceded that Lisa would "perhaps" need to limit herself to working "three to four hours a day." Further, in describing the sort of "reasonable

---

2. Nurse Practitioner attempted to elaborate on her testimony about Lisa's employability, but the trial court refused to allow additional testimony on that topic from Nurse Practitioner because Nurse Practitioner was not a vocational expert. However, Nurse Practitioner's overall opinion that Lisa could not work due to her physical limitations was never stricken from the record, and Mark's counsel inquired into that opinion at length on cross-examination. Lisa does not appeal the trial court's restrictions on Nurse Practitioner's additional testimony regarding employability.

accommodations" that Lisa would need her employer to make, Expert noted that Lisa would need "an employer that understands [her] disability and is willing to break down tasks in smaller pieces and give [her] longer breaks." Although neither Expert nor any other witness was able to identify any current job openings with specific employers that would satisfy these criteria, Expert testified generally that "there are many employers that are willing to do that and understand the nature of disability and are willing to help . . . manage those tasks for individuals."

¶5     After trial, the court found that Lisa was capable of at least part-time employment, and imputed $600 per month in income to her. This calculation was based on a finding that Lisa was capable of working at least three hours per day, for a total of fifteen hours per week, at an hourly wage of $9.61, for fifty weeks per year.

## ISSUE AND STANDARD OF REVIEW

¶6     On appeal, Lisa challenges the trial court's decision to impute income to her, and argues that the evidence introduced at trial did not support the trial court's finding that she was capable of working for three hours per day at an hourly wage of $9.61. "A challenge to the sufficiency of the evidence concerns the trial court's findings of fact. Those findings will not be disturbed unless they are clearly erroneous." *Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 (citation and internal quotation marks omitted); *see also* Utah R. Civ. P. 52(a)(4) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the credibility of the witnesses."). Courts have "broad discretion to select an appropriate method of assessing a spouse's income," including determinations of income imputation. *See Connell v. Connell*, 2010 UT App 139, ¶ 17, 233

P.3d 836 (citation and internal quotation marks omitted). "[T]he existence of conflicting evidence is not sufficient to set aside a trial court's finding." *State v. Menzies*, 845 P.2d 220, 226 (Utah 1992). Instead, "[a] finding is clearly erroneous only if it is in conflict with the clear weight of the evidence." *Kidd v. Kidd*, 2014 UT App 26, ¶ 19, 321 P.3d 200 (citation and internal quotation marks omitted).

## ANALYSIS

¶7     In divorce proceedings, a trial court may impute income to a spouse if it determines that the spouse is underemployed. *Fish v. Fish*, 2010 UT App 292, ¶ 14, 242 P.3d 787. Under Utah law, when income is imputed to an underemployed spouse, "the income shall be based upon employment potential and probable earnings." Utah Code Ann. § 78B-12-203(8)(b) (LexisNexis Supp. 2017).[3] In evaluating a spouse's "employment potential and probable earnings," courts are instructed to consider, among other factors, available employment opportunities, the spouse's health and relevant work history, and "prevailing earnings and job availability for persons of similar backgrounds in the community." *Id.* § 78B-12-203(8)(b)(i)–(x). Trial courts enjoy "broad discretion" in applying these factors and in making factual findings regarding imputation of income. *See Connell*, 2010 UT App 139, ¶ 17 (citation and internal quotation marks omitted); *see also Oldroyd v. Oldroyd*, 2017 UT App 45, ¶ 5, 397 P.3d 645 (observing that trial courts have "considerable discretion in determining the financial interests of divorcing parties").

---

3. "Although this section of the Utah Code addresses imputation for the purposes of child support, it is also relevant to imputation in the alimony context." *Fish v. Fish*, 2010 UT App 292, ¶ 14 n.5, 242 P.3d 787.

¶8      Here, Expert offered her opinion that Lisa is able to work, at least part-time, in a "sedentary occupation," at least as long as her employer is willing to make reasonable accommodations. Expert considered Lisa's MS diagnosis in forming her opinion. Expert also identified three examples of the type of "sedentary occupation" that she thought Lisa could perform, and testified that such jobs pay wages ranging from $9.61 to $12.87 per hour. Based largely on Expert's testimony, the trial court found that Lisa was capable of working for three hours per day, for a total of fifteen hours per week, at $9.61 per hour, for fifty weeks per year, and imputed $600 per month in income to Lisa based on those findings.

¶9      Although both Lisa and Nurse Practitioner testified that Lisa was incapable of working at all, the trial court was not required to credit that evidence. *See Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733 (stating that, "[n]o matter what contrary facts might have been found from all the evidence, our deference to the trial court's pre-eminent role as fact-finder requires us to take the findings of fact as our starting point, unless particular findings have been shown . . . to lack legally adequate evidentiary support"). And on appeal, we do not second-guess a trial court's evaluation of witnesses' relative credibility or of the weight to be given to their testimony. *See Barrani v. Barrani*, 2014 UT App 204, ¶ 24, 334 P.3d 994 (stating that "an appellate court's role is not to reweigh the evidence presented at trial but only to determine whether the court's decision is supported by the evidence, leaving questions of credibility and weight to the trial court").

¶10     In a situation like this one, the trial court could reasonably have credited either side's testimony. It could conceivably have found that Lisa was physically incapable of gainful employment and, had it done so, we would have been in no position to take issue with that finding. In this instance, however, the trial court chose to generally credit Expert's testimony regarding Lisa's

employability over Lisa's and Nurse Practitioner's testimony—something it was entitled to do. The trial court based its findings on Expert's testimony, and those findings were well within the ranges laid out by Expert. Indeed, the trial court selected the lowest of the three hourly wages that Expert presented ($9.61),[4] and selected a per-day hours figure (three) that was toward the low end of the range that Expert presented. Because the trial court's factual findings are clearly supported by Expert's testimony, we cannot conclude that they lack general evidentiary support. *See Kimball*, 2009 UT App 233, ¶ 14.

¶11    Lisa contends, however, that the trial court's findings are nevertheless unsupported by competent evidence, and she makes two specific arguments in support of this contention. First, Lisa argues that the trial court's findings lack support because neither Expert nor any other witness identified a specific job with a specific employer that met Expert's criteria. This argument misperceives the specificity requirements that vocational testimony must meet. Courts may impute income "based upon employment *potential* and *probable* earnings." Utah Code Ann. § 78B-12-203(8)(b) (emphasis added). Neither the statute nor any case law of which we are aware requires trial witnesses to identify a position with a specific employer that meets a spouse's employment needs. A trial court may ground

---

4. Lisa argues that there is insufficient evidence that any employer would pay part-time employees, as opposed to full-time employees, the wages Expert identified. We are unpersuaded. Expert's opinion was that jobs exist in the marketplace on that particular wage scale for part-time employees with minor disabilities. Lisa presented no independent evidence to the contrary, and did not even cross-examine Expert on the wage scale issue. Expert's testimony regarding wages was sufficient evidence to support the trial court's finding that Lisa could earn $9.61 per hour.

its imputation findings on more general evidence, including testimony that jobs exist in the relevant marketplace that could theoretically meet a spouse's employment qualifications and medical needs. *See Busche v. Busche*, 2012 UT App 16, ¶ 21, 272 P.3d 748 (observing that imputation decisions "necessarily depend[] on whether there are jobs available in the relevant market for a person with the party's qualifications and experience"); *cf. Fish*, 2010 UT App 292, ¶¶ 5, 16–17 (upholding an imputation decision where a vocational specialist testified there "were a significant number of local jobs available" for which the spouse was qualified). Here, Expert identified several categories of employment that would theoretically meet Lisa's medical and physical needs.

¶12 Second, Lisa argues that no witness offered any testimony that jobs exist in the current marketplace that meet Lisa's specific need for reasonable accommodations, such as shorter shifts and frequent breaks. On this point, Lisa is simply incorrect; Expert testified that "there are many employers that are willing to [accommodate employees' disabilities] and understand the nature of disability and are willing to help . . . manage those tasks for individuals." Expert's testimony in this regard is not rendered incompetent simply because Expert did not identify any specific employer willing to hire part-time employees on those terms.

CONCLUSION

¶13 The trial court's findings regarding imputation of income to Lisa were supported by competent evidence, and were therefore not clearly erroneous. We have no basis to disturb them.

¶14 Affirmed.